(No. 35441.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ISRAEL EISENBERG *et al.*—(GERALD M. HOFFMAN, Appellant.)

*Opinion filed March 31, 1960.—Rehearing denied May 20, 1960.*

OWEN N. PRICE, and ROBERT J. NOLAN, both of Chicago, for appellant.

BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRANCIS X. RILEY and JAMES J. GLASSER, Assistant State's Attorneys, of counsel,) for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This case poses complex problems involving the conflicting rights of purchasers at a tax foreclosure sale and at the county collector's annual tax sale. On August 5, 1957, the State's Attorney of Cook County filed a complaint in equity in the circuit court to foreclose the lien of general taxes and special assessments upon the subject real estate for the years 1929 to 1946. Thereafter a decree of foreclosure and sale was entered which ordered that "the successful bidder at any sale held hereunder, shall pay, within 90 days after said sale all general taxes and special assessments with penalties, interest and costs which are a lien against" the property "and which were not included in this decree."

On October 22, 1957, the premises were sold and the court approved the sale subject to the conditions of the foreclosure decree, but the purchaser did not pay the delinquent taxes subsequent to 1946 as required by such decree.

Subsequently, the county collector gave due notice by publication of his application for the annual judgment and sale against lands and lots upon which general taxes were delinquent for the year 1956, and a judgment and order of sale was entered against this real estate. On March 20, 1958, it was sold to Gerald M. Hoffman, appellant, at the annual tax sale and subsequently he paid the delinquent general taxes due thereon for the years 1947 through 1955.

together with interest and penalties. The county collector thereupon issued certificates of sale to Hoffman for such real estate.

Thereafter, on March 19, 1959, the State's Attorney filed a supplemental petition in the original equity foreclosure proceeding seeking to set aside such annual tax sale of the premises and to expunge such sale and the payment of prior tax liens thereon from the record. Pursuant to this petition the circuit court ordered the sale set aside, and directed the county treasurer to repay to Hoffman the money paid by him for the purchase of this real estate and for delinquent taxes, upon his surrender of the certificates of sale. From this order, he appealed directly to this court, since revenue is involved.

Hoffman contends that the circuit court did not take jurisdiction of the 1947 to 1955 delinquent taxes, and therefore was without authority to set aside the annual tax sale of these liens. The theory of the People is that the circuit court foreclosure suit was for the purpose of removing all tax liens against the property, and that it retained jurisdiction to enter the order complained of.

The parties agree that this case grows out of the long standing practice of the State's Attorney and the county board of Cook County in connection with tax foreclosures pursuant to the Revenue Act. (Ill. Rev. Stat. 1957, chap. 120, par. 697.) Instead of foreclosing the lien of all unpaid taxes, the county board evolved the practice in 1942 of including only the unpaid taxes of certain prior years in the complaint to foreclose and of requiring full payment, by the purchaser, of taxes delinquent for later years, with interest and penalties, as a condition precedent to the issuance of the certificate of sale and the tax foreclosure deed.

This is said to have been necessary in order to deter property owners from defaulting on current taxes in anticipation of clearing the entire tax delinquency by foreclosure

at a later date, as well as to provide important tax revenue to the county from penalties on the taxes subsequent to those foreclosed. The county board originally authorized foreclosures of delinquent taxes through 1940 upon a guaranteed minimum bid with full payment of subsequently accrued taxes, but after public discussion in 1949, it altered this procedure to permit the foreclosure of taxes through 1946.

In reality, such tax foreclosure is catalyzed by a developer who estimates the potential value of the real estate and then submits to the county board a guaranteed minimum bid for the property in connection with the proposed foreclosure sale for delinquent taxes through 1946, together with a certified check therefor. He further agrees to pay the taxes in full with penalties for the years 1947 to date before a certificate of sale issues. If the guaranteed bid is approved by the county board, a foreclosure complaint is filed in standard form. Both the complaint and the decree recite that such prospective purchaser has made such minimum bid and has agreed to pay such remaining delinquent taxes. The decree orders that the successful bidder at any sale thereunder shall, within 90 days, pay all general taxes and special assessments with penalties, interest and costs which are a lien against the real estate, and not included in the decree. The ultimate purpose of such tax foreclosure procedure, like that of the annual tax judgment and sale, (Ill. Rev. Stat. 1957, chap. 120, par. 705 *et seq.*) is to return the property to the regular tax rolls, free of tax liens.

After a foreclosure of this type, however, subsequent and delinquent taxes may remain unpaid for a period of time, and as in the case at bar, the property may be offered for sale at the annual tax sale before the equity foreclosure is completed. If a third party buys the property at such sale, the purchaser at the tax foreclosure sale is then forced to pay the higher statutory penalties provided upon redemption of the property in order to remove the lien of such

taxes, (Ill. Rev. Stat. 1957, chap. 120, par. 697,) which alters his computations in arriving at the net cost of the property.

The possibility of upsetting this calculation appears to be of sufficient moment that the People here seek to void the annual tax sale of the property upon the ground that the circuit court took complete jurisdiction of all taxes, and therefore, in the protection of that jurisdiction, could rescind the collector's annual sale in question.

We need not pass judgment on the desirability or necessity of the procedure for the foreclosure of only part of the delinquent taxes against real property. Suffice it to say, that we find nothing in the Revenue Act to deprive a circuit court of jurisdiction to foreclose less than all of the delinquent taxes on property. Indeed, proposals to amend the revenue article to make it mandatory that all delinquent taxes be included in tax foreclosure suits were rejected by the Illinois Commission on Tax Foreclosures appointed pursuant to Senate Bill 210 of the 69th General Assembly. (Report of Commission, pp. 4-5.) We know of no doctrine to prevent this practice, other than the equitable rule of jurisdiction to prevent a multiplicity of suits which, if applicable, could only be raised by the property owner himself.

However, even though we recognize the validity of this procedure, we do not thereby approve the propriety of the circuit court in entering an order which interferes with the action of the county collector in performing his duty as required by the sections of the Revenue Act providing for the annual tax sale. The Revenue Act does not indicate or provide that its provisions for the annual tax sale are inferior or in any manner relegated to its terms relative to tax foreclosures.

The language of the act providing for the foreclosure of tax liens states that accrued taxes, interest, penalties and

costs shall be liens "until the same are paid *or until the real property is sold pursuant to any of the provisions of this Act;* * * *." (Ill. Rev. Stat. 1957, chap. 120, par. 697.) (Italics ours.) Thus, the statute itself indicates that tax foreclosures are not, and were not intended to be a substitute for the annual tax sale.

The historical development of the statutory provisions for the annual tax sale and for tax foreclosures is significant. "The Revenue Act of 1872 originally provided, by sections 191 to 208, for an application to the county court for judgment for taxes and a sale under such judgment by the county collector. This was the only method of selling land for taxes, * * *. Authority to foreclose the tax lien in equity was given in 1881 by an amendment of section 253 which contained no procedural directions, except that the same notice and right of redemption as were then required by law, and conformity with sections 4 and 5 of article 9 of the constitution, were required." *People* v. *Cant,* 260 Ill. 497, 499, 500.

If the appellant had not appealed from the order which was entered on the supplemental petition, an anomalous situation would have arisen in which real estate which was free from taxes would have been restored to a condition of tax delinquency for the years of 1947 to 1955, and the county collector would have been required to recover from the tax receiving agencies the money necessary to make the ordered refunds.

We recognize that the circuit court may foreclose only part of the delinquent taxes and by its decree make the payment of subsequent unpaid taxes a condition precedent to the issuance of a certificate of sale and a tax foreclosure deed. However, we find no authority to warrant the trial court to foreclose only a part of the tax liens and in connection therewith to prevent the collector from holding the annual tax sale of the property, as required by statute, or

to prevent a third party from purchasing such property at the annual tax sale and from paying the subsequent unpaid taxes due thereon.

What the circuit court did under this procedure was to foreclose the delinquent taxes through 1946. The purchaser at the foreclosure sale bought this property subject to subsequent tax liens. The decree of the circuit court which conditioned the issuance of certificate of sale and tax deed upon the satisfaction of subsequent unpaid taxes did not foreclose or eliminate those liens. The People urge that a tax foreclosure should be considered as a single proceeding in which the entire amount of taxes due is one lien, which is to be entirely extinguished by the foreclosure and cite *People* v. *Anderson,* 380 Ill. 158, *People* v. *Straus,* 355 Ill. 640, and *Clark* v. *Zaleski,* 253 Ill. 63, as authority for this rule. This doctrine is sound as applied in those cases in which the foreclosure was for all the taxes which were delinquent. It is manifestly unsound, however, when the People have deliberately omitted a substantial part of the delinquent taxes from the proceedings. It is inconceivable that taxes to be foreclosed and taxes omitted from the foreclosure should be treated as a single lien.

Nor do we dispute the argument of the People that a court of equity retains jurisdiction until the entire matter is consummated, including the supplemental decree ordering the issuance of a tax deed. (*Allen* v. *Nettleton,* 6 Ill.2d 141.) The trial court in the case at bar had jurisdiction to protect the sale and to enter such orders as may be required to effect that purpose, as long as the orders did not interfere with the statutory duties of the collector in connection with the annual tax judgment and sale of lots and lands for delinquent taxes. The order entered on the supplemental petition was not required to protect the sale under the tax foreclosure decree. Its only function was to set aside the annual tax sale and to protect the arrangement between the county board, the State's Attorney and

purchaser at the tax foreclosure sale. The desire to protect this arrangement does not authorize the circuit court to prevent the county collector from proceeding with the annual tax sale in the manner directed by statute.

The judgment of the trial court must accordingly be reversed.

*Judgment reversed.*