ROBERT R. KRAUSE, Plaintiff-Appellant, v. PEKIN LIFE INSURANCE COMPANY, Defendant-Appellee (Koenning Insurance Company, Inc., *et al.*, Defendants).

First District (3rd Division)   No. 1—88—0984

Opinion filed February 21, 1990.

Drumke & Patterson, Ltd., of Chicago (Robert B. Patterson, of counsel), for appellant.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Robert J. Franco, of counsel), for appellee.

JUSTICE WHITE delivered the opinion of the court:

Plaintiff, Robert Krause, appeals from an order of the circuit court granting defendant's motion for judgment filed at the close of plaintiff's case.

In October 1981, plaintiff filed this action against defendants Pekin Life Insurance Co. (Pekin) and Koenning Insurance Agency (Koenning). Plaintiff alleged in his complaint that on October 24, 1979, he signed an application for disability insurance prepared by Joseph Haverstuhl, an employee of Koenning; that at the time he signed the application, it provided for a monthly benefit of $1,000 and a monthly premium of $56.40; that on January 9, 1980, he became totally disabled; and that in February 1981, Haverstuhl advised him that Pekin had refused to issue a policy with a $1,000-a-month benefit and had instead issued a policy with an $800-a-month benefit. Plaintiff further alleged that Haverstuhl, acting as an agent for Pekin, fraudulently altered the application to reflect an $800-a-month benefit and requested both specific performance of the original application and punitive damages in the amount of $500,000.

At trial, plaintiff testified that in 1979, he had known Joseph Haverstuhl for eight years, that he considered Haverstuhl a friend, and that Haverstuhl frequently visited him at his home. Plaintiff stated that on October 24, Haverstuhl came to plaintiff's house to talk about disability insurance. After discussing plaintiff's finances, Haverstuhl suggested that a $1,000-a-month benefit would be sufficient. Plaintiff stated that Haverstuhl filled out the application to reflect the $1,000-a-month benefit and that he paid Haverstuhl the first monthly premium of "$55 and some change." Plaintiff testified that future monthly premiums would be paid by Haverstuhl in exchange for typing services rendered by plaintiff's wife.

Plaintiff further testified that in the first week of December 1979, he had a physical examination as required by the insurance company, and that in the following week, Haverstuhl told him that plaintiff had passed his physical and his application had been accepted. Plaintiff stated that at that time, Haverstuhl said nothing else about the policy.

Plaintiff testified that after he was injured in January 1980, he contacted Haverstuhl, who gave him the necessary claim forms and a copy of the policy. Plaintiff testified that when he received the policy, he noticed that the amount of the monthly benefit on the application form had been changed from $1,000 to $800; however, he was told by Haverstuhl that a supplemental policy would be issued. Plaintiff further testified that he received no disability payments in January or February, and that on March 7, he was contacted by Haverstuhl, who told plaintiff that he needed a check from plaintiff, payable to Pekin, in the amount of $136.65. In exchange for the check, Haverstuhl gave plaintiff $100 in cash and told him he would give him the other $36 later.

On March 12, plaintiff received a check from Pekin in the amount of $1,600, representing disability benefits for January and February. Since that time, plaintiff has been receiving monthly benefits in the amount of $800 a month.

Scott Martin, an underwriter for Pekin, was called as an adverse witness by plaintiff. Martin testified that in November 1979, he received plaintiff's application for disability insurance and that the application was for a monthly benefit of $800. Martin testified that the $800 amount appeared to have been written over another figure, that it was not unusual for Pekin to receive applications containing scribblings or items written over or crossed out, and that it was not Pekin's practice to independently investigate such items. Martin further testified that after reviewing the application, he concluded that, based on his salary, plaintiff was eligible only for a $700 monthly benefit; but after Martin discussed the matter with Ronnie Fry, his supervisor, it was decided that plaintiff would be given the $800 monthly benefit.

Martin testified that, although no premium was received with the application, the policy was issued and returned to Koenning in December 1980. Martin further testified that in January 1980, the file was returned to him because no premiums had been received. Martin stated that after receiving no response to Pekin's request for payment, he began the process of cancelling the policy. Subsequently, Martin was notified that a claim had been made under the policy and that the agent, Joseph Haverstuhl, had collected the premium and failed to forward it to Pekin.

Martin also testified that insurance agents who submit applications to Pekin have no power to bind the company and that only an underwriter could determine whether an application would be accepted and a policy issued.

Joseph Haverstuhl testified that in 1979 he was a "life manager" for Koenning. Haverstuhl testified that Koenning was a registered insurance agent for Pekin and that, under that agency, he sold and solicited policies for Pekin. Haverstuhl further testified that he himself did not have an agency relationship with Pekin and that he did not have the power to bind Pekin to a policy.

Haverstuhl also testified that at the time he sold the Pekin policy to plaintiff he could have submitted an application for disability insurance on plaintiff's behalf to other companies, but those companies were "restrictive in their offers" and, in his opinion, Pekin was the only company that would have accepted an application at the desired level of benefits.

Haverstuhl testified that he first discussed insurance with plaintiff's wife, Linda, who asked him about automobile and homeowner's insurance. Subsequently, Haverstuhl sold insurance policies to plaintiff and his wife covering their cars and home. Haverstuhl testified that some time later, in August or September of 1979, he performed an "insurance review" for plaintiff and his wife, and as a result of that review, he and plaintiff entered into a discussion of disability insurance. Haverstuhl stated that plaintiff expressed concern about being able to take care of utility and food bills in the event he became disabled.

On October 24, 1979, Haverstuhl filled out the application in question for plaintiff. Haverstuhl testified that he filled in $1,000 as the monthly benefit and an amount in excess of $50 as the monthly premium. Haverstuhl further testified that either he or Scott Martin changed the monthly benefit to $800 and the premium amount to $45.46 after it was discovered that Haverstuhl had miscalculated the benefits to which plaintiff was entitled. Haverstuhl testified that sometime between October 24 and November 7, he informed plaintiff's wife and then plaintiff about the miscalculation and the reduction of the benefits to $800.

Haverstuhl also testified that he considered plaintiff his client and that when he submitted the application to Pekin and when he interceded with Pekin's claims department, he was acting on plaintiff's behalf.

After Haverstuhl's testimony, plaintiff introduced several documents into evidence, including certified copies of certain Department of Insurance records. Plaintiff then called Ronnie Fry, vice-president at Pekin, as an adverse witness.

Fry testified that in 1979 he was chief underwriter at Pekin. At that time, it was Pekin's policy to return applications for an applicant's approval only when someone at the company made a change in the application. Fry further testified that it was not unusual for Pekin to receive applications containing figures that had been scratched out or written over and that there was no requirement that such applications be returned for the applicant's signature.

Fry also testified that when he received plaintiff's application, it contained a request for a monthly benefit of $800, that he overruled Scott Martin's decision to reduce the benefit to $700, and that the next contact he had with the application was in February or March 1980, when he learned that a claim had been made and that the policy had been cancelled because no premium had been received. According to Fry, the policy was reinstated when Pekin was informed

by Koenning that Joseph Haverstuhl had collected a quarterly premium in January 1980 and failed to remit it.

It was also Fry's testimony that Pekin had an agency agreement with Koenning, that no agency agreement existed between Pekin and Haverstuhl, that the commission on plaintiff's policy would be paid to Koenning, that Koenning was authorized to collect the premiums on plaintiff's policy, and that it was Koenning that Pekin notified when questions arose about the payment of the premiums. Fry also testified that under the agency agreement, no agent had the power to bind Pekin to a policy of insurance and that there were no exceptions to this rule.

Linda Krause testified that she was present on October 24, 1979, when the insurance application was filled out, that the monthly benefit requested was $1,000, and that the monthly premium of approximately $55 was paid in advance. Linda Krause also testified that in December 1979, Haverstuhl telephoned to inform her that the application had been accepted. Linda Krause stated that when Haverstuhl delivered the policy in February 1980, she noticed that the monthly benefit had been changed from $1,000 to $800 and that the box showing that a monthly premium of $55 had been paid had been changed to indicate that the premium was $45 and would be paid COD.

At the close of plaintiff's case, Pekin presented a motion for judgment. After hearing arguments, the court ruled that the proof had to be clear and convincing and because plaintiff had failed to meet that standard, judgment would be entered for Pekin. This appeal followed.

■ Under section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1110), in all cases tried without a jury, a defendant may, at the close of the plaintiff's case, move for a finding or judgment in his or her favor; in ruling on the motion, the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence. On appeal, the decision of the trial court should not be reversed unless it is contrary to the manifest weight of the evidence. *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43; *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 349 N.E.2d 399.

■ The Illinois Supreme Court has held that section 2—1110 requires a determination of whether a plaintiff has presented a *prima facie* case, *i.e.*, whether he has presented at least some evidence on every element essential to his cause of action. If he has not, defendant is entitled to judgment in his favor. *Kokinis*, 81 Ill. 2d at 154.

■ In an action for specific performance, the existence of the contract that a plaintiff seeks to enforce and the terms thereof must be established by clear, explicit, and convincing evidence. (*Monahan v. Monahan* (1958), 14 Ill. 2d 449, 153 N.E.2d 1; *Wolford v. James E. Kolls Investment Co.* (1978), 61 Ill. App. 3d 405, 377 N.E.2d 1314; *In re Estate of Holder* (1976), 42 Ill. App. 3d 35, 355 N.E.2d 333.) In the present case, the trial court concluded that plaintiff failed to establish by clear and convincing evidence that there existed a contract for a monthly benefit of $1,000. We agree.

Plaintiff's argument on appeal that he clearly and convincingly established the existence of a contract for a monthly benefit of $1,000 turns on his contention that, at all times, Joseph Haverstuhl was acting as agent for Pekin. Plaintiff claims that because Haverstuhl was Pekin's agent, his actions were sufficient to bind Pekin to a contract for disability benefits of $1,000 a month. Plaintiff bases his contention that Haverstuhl was Pekin's agent, in part, on the Department of Insurance records that were admitted into evidence. Plaintiff argues that these records establish conclusively that, in 1979, Haverstuhl was an authorized agent for Pekin.

■ Plaintiff correctly argues that records such as the ones in question generally are admissible. All records and reports prepared by public officials pursuant to a duty imposed by law or required by the nature of their offices are admissible as proof of facts stated therein so far as they are relevant and material to a particular inquiry. (*Department of Conservation v. First National Bank* (1976), 36 Ill. App. 3d 495, 344 N.E.2d 11.) However, it has long been the law that a court is not required to receive proof offered in such form that its materiality cannot be determined. *Bradley v. Western Casket & Undertaking Co.* (1914), 185 Ill. App. 375.

■ In the present case, the Department of Insurance records were admitted without any testimony to explain their meaning or assist in interpreting the entries, and despite plaintiff's claim that they state so conclusively, we cannot determine from the records that Haverstuhl was a registered insurance agent for Pekin when he sold the policy to plaintiff. Further, even if we were able to conclude from the records that Haverstuhl was a registered agent for Pekin, we would not be required to find that Haverstuhl was acting as Pekin's agent, rather than as a broker, at the time of the transaction.

■ A broker is an individual who procures insurance and acts as a middleman between the insured and the insurer, who solicits insurance business from the public under no employment from any special company and who, having secured an order, places the insurance

with the company selected by the insured, or in the absence of any selection by the insured, with a company he selects himself. (*Galiher v. Spates* (1970), 129 Ill. App. 2d 204, 206, 262 N.E.2d 626.) An agent is an individual who has a fixed and permanent relation to the companies he represents and who has certain duties and allegiances to such companies. (*Galiher*, 129 Ill. App. 2d at 207.) It is a person's conduct, rather than his title, which is determinative of whether he serves as the agent of an insurance company or as the broker for an applicant for insurance in a particular transaction. (*DeGraw v. State Security Insurance Co.* (1976), 40 Ill. App. 3d 26, 351 N.E.2d 302.) Therefore, a court must examine the facts of a case closely to determine whether a seller of insurance is an agent or a broker and to whom he may owe a duty. (*Browder v. Hanley Dawson Cadillac Co.* (1978), 62 Ill. App. 3d 623, 379 N.E.2d 1206.) Factors to be considered include who first set the individual in motion, who could control his action, who was to pay him, and whose interest he was there to protect. (*Browder*, 62 Ill. App. 3d at 629; *Moone v. Commercial Casualty Insurance Co.* (1953), 350 Ill. App. 328, 112 N.E.2d 626.) After examining the facts before us in the present case, we find that Haverstuhl's actions were those of a broker for the plaintiff and not those of an agent for Pekin.

▮▮▮ Joseph Haverstuhl and Ronnie Fry testified that Haverstuhl was not an agent for Pekin; and Haverstuhl, Fry, and Scott Martin testified that Haverstuhl had no authority to bind Pekin to a policy of insurance. In addition, it was Haverstuhl's uncontradicted testimony that at the time he sold the policy to plaintiff, he could have submitted an application for disability insurance on plaintiff's behalf to other companies but he chose Pekin because, in his opinion, it was the only company that would have provided the desired level of benefits.

Haverstuhl also testified that he considered plaintiff his client and that his actions were on plaintiff's behalf. That plaintiff was Haverstuhl's client is supported by plaintiff's testimony that he and Haverstuhl had been friends for eight years and that Haverstuhl agreed to pay the premium on plaintiff's disability policy in exchange for typing services rendered by Linda Krause. It is also supported by the testimony concerning Haverstuhl's actions in getting the policy reinstated after it was cancelled. We believe that these facts clearly support a conclusion that Haverstuhl's allegiance was to plaintiff, and not to Pekin.

In conclusion, we find that Joseph Haverstuhl was not acting as an agent for Pekin; that, therefore, he had no authority to accept or

enter into a contract on Pekin's behalf, and that the trial court correctly concluded that plaintiff failed to establish by clear and convincing evidence that there existed a contract for disability benefits of $1,000 a month.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CERDA, P.J., and RIZZI, J., concur.