JAMES DUMENRIC, Plaintiff, v. UNION OIL COMPANY OF CALIFOR-NIA, Defendant and Third-Party Plaintiff-Appellee and Cross-Appellant (Aetna Life and Casualty Company, Third-Party Defendant-Appellant and Cross-Appellee; Mid-State Mechanical Corporation *et al.*, Third-Party Defendants).

First District (6th Division) No. 1—90—2490

Opinion filed October 30, 1992.

Cassidy, Schade & Gloor, of Chicago (Timothy J. Ashe, Martha A. Pagliari, and Lynn D. Dowd, of counsel), for appellant.

Querrey & Harrow, Ltd., of Chicago (Eric L. Samore and Ellen S. Martin, of counsel), for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

Aetna Life and Casualty Co. (Aetna) appeals from an order granting summary judgment in favor of Union Oil Company of California (Union). The trial judge held that Aetna was estopped from denying insurance coverage to Union for an occurrence in which James Dumenric was injured while working on an oil storage tank owned by Union. Aetna contends that the record establishes, as a matter of law, that Aetna was not estopped to deny coverage to Union or, alternatively, that fact questions exist that would bar summary judgment.

Union entered into an agreement with Mid-State Mechanical Corporation (Mid-State) under which Mid-State was to perform certain pipe-fitting work at Union locations. The agreement provided that the work would begin on October 21, 1984; the estimated time of completion was given as October 21, 1985. Mid-State was to provide general liability insurance, with Union named as an additional insured; this was Union's company policy at that time.

A certificate of insurance was issued by Daniel Bennett, an insurance broker, to Mid-State on October 18, 1984. The certificate was sent to and reviewed by Union on approximately October 24. The certificate provided that Union was an additional insured on an Aetna insurance policy issued to Mid-State and that Union would be given 10 days' notice of any cancellation of the policy. The certificate provided that the policy was to run until October 21, 1985. In reliance on this insurance certificate, Union did not require Mid-State to seek other insurance coverage nor did it seek alternative coverage itself.

James Dumenric, an employee of Mid-State, filed suit against Union for injuries incurred while working on Union facilities. Dumenric alleged that he had been injured on December 11, 1984. Union sought coverage for the complaint of Dumenric by tendering the

complaint to Bennett. Union specifically referred to the certificate of insurance that had been provided by Bennett.

Aetna informed Union that Bennett had forwarded Union's claim of coverage to Aetna; Aetna had reviewed the matter and determined that Aetna had not insured Mid-State since November 21, 1984, which was before the date of the alleged injuries. Union also tendered to Aetna the defense of another lawsuit filed by another employee of Mid-State, Robert Smith. Aetna denied coverage in the Smith case also.

Union filed a third-party complaint, later amended, against Mid-State, Aetna, Bennett and another insurance company. Only Aetna is involved in this appeal.

Count I of the amended complaint, captioned "Estoppel," sought a declaration that Aetna should be estopped from denying a defense and should indemnify Union up to $500,000 against the Dumenric lawsuit. Amended count I also sought costs, expenses and attorney fees incurred in defending the Dumenric action. Amended count IV, captioned "Breach of Contract," sought the same relief as amended count I. Union and Aetna both filed motions for summary judgment. The trial judge granted Union's motion for summary judgment on count I and denied Union's motion for summary judgment on count IV. The judge also denied Aetna's motion for summary judgment.

Aetna appeals from the order granting Union's motion for summary judgment as to count I and denying Aetna's own motion for summary judgment. Union has filed a cross-appeal of the order denying its motion for summary judgment on count IV. Aetna has filed a motion to strike Union's cross-appeal.

This case hinges principally on the relationship between Bennett and Aetna. It is Aetna's position that it issued a policy of insurance to Mid-State only; that Aetna never issued the certificate of insurance to Union; and that Bennett was an agent of Mid-State and not of Aetna. The trial judge found, as a matter of law, that Bennett was an agent, or an apparent agent, of Aetna and that Bennett bound Aetna to provide insurance coverage to Union. He held that, if Bennett exceeded his authority, Aetna should proceed against Bennett.

The motions for summary judgment were based on the pleadings and the depositions of Daniel Bennett, Michael Hoder and Benjamin King. Our discussion necessarily begins with the deposition of Daniel Bennett.

Bennett testified that he had been a practicing insurance broker since 1962 and during that time he had worked for numerous insurance companies and agencies. In 1982, Bennett formed his own insurance agency. For the two years following the opening of his own company, Bennett had agreements with, and placed property insurance for, three or four different insurance companies, including Aetna. He considered himself an agent and a broker, sometimes acting on behalf of the company and sometimes on behalf of the insured.

Bennett received commissions from Aetna at a rate of about 16%. He followed a "written set of procedures," but did not say what these procedures were or who required them. He received various manuals from Aetna which detailed which risks or insurance Aetna would be interested in. He did not receive any training from Aetna.

His agreement with Aetna, entitled "Agency Agreement," provided as follows:

"1. Authority of Agent During Term of Agreement
The Agent is authorized, subject to the underwriting rules and practices of the Company as they are from time to time constituted, to solicit proposals, and to collect and receipt premiums, and to bind and execute contracts for the kinds of insurance for which a commission is specified in the Commission Schedules issued by the Company to the Agent.
* * *
2. Notification to the Company
The Agent agrees to forward to the Company copies of all binders, policies, certificates and endorsements issued by the Agent, or to otherwise notify the Company of all liability accepted within three business days following the issuance or acceptance by the Agent."

Bennett issued certificates of insurance. He testified that he did not have to contact Aetna before signing a certificate of insurance "on a risk of this kind." He could just inform the underwriter by calling or sending a copy of the certificate. The policy for issuing certificates varied from company to company.

Bennett stated that he contacted and met with a Mid-State representative a couple of times about Mid-State's insurance needs. He gathered information from Mid-State and then filled out an application for Mid-State which was submitted to Aetna. He met with a Mid-State representative in 1983 and told him that he was duplicating some of Mid-State's current insurance coverage with another

carrier. He was attempting to get Mid-State a better price on its insurance.

Bennett determined that insurance from Aetna would best suit Mid-State's needs. He procured a policy from Aetna. Aetna told Bennett that it was not going to renew Mid-State's insurance policy but agreed to extend its insurance coverage of Mid-State for one month, until November 21, 1984. He was told by Mid-State that it needed a certificate for Union because Mid-State was going to do some work for Union. Bennett asked a woman at Mid-State to type the certificate. The certificate of insurance was dated October 18, 1984, and stated that it would expire on October 21, 1985. The certificate named Union as an additional insured and showed that Bennett signed as an agent for Aetna. Bennett believed that Union was an additional insured under the Aetna policy when he issued the certificate. Union was not named as an additional insured on the insurance policy. An endorsement policy was never sent to Union.

Bennett told the secretary to type the certificate to show the expiration date of November 21, 1984, instead of October 21, 1985. The inaccurate date was a typographical error. Bennett told the secretary at Mid-State that the coverage was only going to be extended for one month. He made out the certificate without calling Aetna; on a risk of this kind, he had the authority to issue the certificate. His authority was based on an understanding between the agents and the underwriters.

Bennett was not sure whether he sent or delivered the policy, but was sure he did one or the other. Generally a policy endorsement was issued when a certificate of insurance was issued. There was a procedural mess at Aetna during this time and policies of endorsement were not being issued after certificates of insurance were submitted.

He had some contact with Mid-State in November of 1984 concerning Mid-State's insurance needs, but Mid-State eventually decided to obtain its insurance from another agency.

Around March 6, 1985, Bennett was contacted by a Union representative, Mike Hoder. When asked whether he was still providing insurance for Mid-State, Bennett responded that he was no longer providing coverage for Mid-State; Bennett sent Union a letter to this effect.

Mike Hoder, Union's supervisor of purchasing, testified that in dealing with a contractor for the first time, Union would generally send a request for an insurance certificate and a form copy of a Union certificate directly to the contractor. The insurance broker

would then send back the certificate to Union. He received the certificate from Bennett.

Hoder also received a certificate of insurance from Swank Insurance on October 29, 1984. This certificate stated that they were insuring Mid-State. The insurance coverage provided by Swank was different from the coverage indicated on the certificate provided by Bennett in that (1) Union was not listed as an additional insured; (2) the certificate did not contain a cross-liability clause; and (3) it did not address the waiver of subrogation. Hoder did not investigate this new certificate because he had proper insurance from Aetna on file. Sometime later, Union became aware that an insurance problem existed.

Benjamin King, Jr., the president of Mid-State, testified that in the early fall of 1984, he switched insurance brokers from Bennett to Swank, because Aetna had "dropped" Mid-State "due to the amount of refinery work." Swank acquired coverage for Mid-State through another insurance carrier.

Aetna's notice of cancellation of the Mid-State policy was sent to Mid-State and Bennett but not to Union.

■ To establish estoppel in an insurance context, the insured must show: (1) that he was misled by the acts or statements of the insurer or its agent; (2) reliance by the insurer on those representations; (3) that such reliance was reasonable; and (4) detriment or prejudice suffered by the insured based on the reliance. (*Allstate Insurance Co. v. Tucker* (1989), 178 Ill. App. 3d 809, 533 N.E.2d 1004.) An intent to mislead the relying party is not necessary for recovery. *Gary-Wheaton Bank v. Meyer* (1984), 130 Ill. App. 3d 87, 473 N.E.2d 548.

Aetna contends that whether Bennett was an agent of Aetna is a fact question that may not be decided by summary judgment and that any reliance by Union on the representations of Bennett was unreasonable.

Both parties have argued extensively and have cited many cases on the issue of whether Bennett was in fact an agent of Aetna. Citing *Krause v. Pekin Life Insurance Co.* (1990), 194 Ill. App. 3d 798, 551 N.E.2d 395, Aetna contends that in determining whether an agency relationship exists, a court is to apply a four-prong test, which, for the sake of brevity, we will not repeat. Aetna also cites two opinions from the Seventh Circuit Court of Appeals which held that the four-prong test is applicable even where an agency agreement exists between a broker and an insurer. (*Lazzara v. Howard A. Esser, Inc.* (7th Cir. 1986), 802 F.2d 260; *American Insurance*

*Corp. v. Sederes* (7th Cir. 1986), 807 F.2d 1402.) Union has cited the very recent case of *Zannini v. Reliance Insurance Co. of Illinois, Inc.* (1992), 147 Ill. 2d 437, 590 N.E.2d 457, as authority for the proposition that the four-prong test is not applicable where an agency agreement exists between a broker and an insurer. Aetna has sought to distinguish *Zannini* and argues further that *Zannini* did not hold that an agency relationship existed as a matter of law.

We have determined that we need not, and should not, decide the question of whether Union has established, as a matter of law, that Bennett was Aetna's agent in fact when the certificate was signed. During oral argument one of the members of this court pointed out that Aetna had instructed Bennett that it intended to cancel Mid-State's policy and agreed to an extension of the policy only until November 21, 1984. Through the negligence of Bennett, the certificate of insurance was issued showing that the policy termination date was October 21, 1985. Thus, the agent acted in contravention of the express direction of his principal. In substance, therefore, under the terms of the agency agreement, upon which Union relies, Bennett had authority to bind Aetna, but the agreement provided that his authority was "subject to the underwriting rules and practices" of Aetna. The evidence shows that Aetna, exercising its rights under the agreement, limited Bennett to binding Aetna only until November 21, 1984. The legal effect of that limiting instruction by Aetna has not been briefed or argued either in the circuit court or in this court. Consequently, we do not feel that we should pass on the question, particularly because we have determined that the trial judge correctly found that Bennett had apparent authority as a matter of law.

█ In *State Security Insurance Co. v. Burgos* (1991), 145 Ill. 2d 423, 583 N.E.2d 547, the court enunciated the principles of apparent authority:

> "Apparent authority arises where a principal creates, through words or conduct, the reasonable impression that the putative agent has been granted authority to perform certain acts. [Citations.] Apparent authority is that authority which a reasonably prudent person, in view of the principal's conduct, would naturally suppose the agent to possess. [Citation.] The principal, having created the appearance of authority, is estopped. to deny it to the detriment of a third party. [Citation.]
>
> \* \* \*
>
> \* \* \* It is not necessary that the insurer be aware of the particular acts being performed by the broker; once the in-

surer has created the appearance of authority, the insurer is estopped to deny it, even though the insurer may be ignorant of its exercise. [Citation.] Fairness mandates such a result because, where the insurer has created the appearance of authority in the broker, the loss must fall upon the insurer, rather than upon the innocent insured. [Citation.]" 145 Ill. 2d at 431-33.

■ We judge that the evidence establishes, as a matter of law, apparent authority on the part of Bennett to bind Aetna. Most important is the agreement itself between Aetna and Bennett. To illustrate the weight to be given the agreement, we refer to *Zannini*, in which the supreme court held that the existence of the agency agreement between the broker and the insurer rendered unnecessary resort to the four-prong test enunciated in *Krause v. Pekin Life Insurance Co.* (1990), 194 Ill. App. 3d 798, 551 N.E.2d 395. The *Zannini* court distinguished *Krause*:

"Unlike the procurer of insurance in *Krause*, Nesslar [the broker] had an agency-company agreement with Reliance [the insurer], the company with which he placed coverage. The agreement gave Nesslar power to bind Reliance. The weight of the evidence shows that Nesslar was an agent of Reliance, expressly authorized to bind coverage on behalf of Reliance." (*Zannini*, 147 Ill. 2d at 454.)

A reasonable argument could be made that *Zannini* held that the existence of the agency agreement constituted the manifest weight of the evidence that the broker was the agent of the insurer. In any event, in determining the issue of apparent authority, the agreement must be given great weight.

There is no doubt that the agreement gave Bennett the right to bind Aetna, which included the issuance of certificates of insurance. Bennett did issue certificates of insurance. He testified that he did not have to get prior approval before signing certificates. Most important, there is nothing expressed in the written agreement that would require Bennett to get prior approval by Aetna. The only requirement is that Bennett was to forward copies of certificates to Aetna, "or to otherwise notify" Aetna within three days after the issuance of the certificate. Regardless of how Aetna may seek to deprecate Bennett's testimony, his testimony was not rebutted by Aetna, which was in a position to do so.

Union has cited *Burgos* as an example of a reviewing court finding apparent authority as a matter of law. Aetna seeks to distinguish *Burgos* from this case and argues that factually *Burgos* was

much stronger for the insured than is this case. The issue is not whether this case is factually as strong as *Burgos*; the issue is whether it is strong enough to support summary judgment. We conclude that it is. We note further that this case is factually stronger than *Burgos* in an almost decisive aspect. The supreme court held that *Burgos* established apparent authority as a matter of law even in the absence of a written agency agreement, which is present here.

Aetna also contends that Union did not reasonably rely on the certificate of insurance or, alternatively, an issue of material fact exists whether Union could reasonably rely on the certificate. The principal basis of Aetna's position is the fact that Union received a revised certificate of insurance issued by Swank five days after the Bennett certificate was issued. Aetna concludes, "Union Oil[, after receiving the Swank certificate,] chose to take no action whatsoever." Aetna has not suggested just what "further action" Union should have taken. Hoder testified that it was part of his job to review insurance. He also testified that he relied on Bennett's certificate.

In substance, Aetna's argument is that the Swank certificate provided duplicative coverage and that Hoder should have wondered why. Hoder explained that it was not duplicative coverage: the certificate did not contain a cross-liability clause; it did not address the waiver of subrogation; and most important, it did not list Union as an additional insured, as did the certificate from Bennett. Under these circumstances, we believe that the evidence establishes, as a matter of law, that Union's reliance on the Bennett certificate was reasonable.

We repeat the observation of the supreme court in *Burgos* that fairness requires that the loss must fall upon the insurer rather than upon the innocent insured where the insurer has created the appearance of authority in a broker. We think that the result of *Burgos*, which involved a third party, the insured, is even more compelled in this case where an innocent fourth party relied upon the apparent authority of the agent.

For these reasons, we conclude that the trial judge properly entered summary judgment on behalf of Union. In view of our holding, we need not decide whether the evidence established that Aetna ratified the actions of Bennett.

■ Union has cross-appealed from the denial of its motion for summary judgment on count IV. We had previously denied Aetna's motion to dismiss the cross-appeal. Aetna has renewed its motion to

dismiss in its brief. We adhere to the ruling denying the motion to dismiss. (See *People v. American National Bank & Trust Co.* (1965), 32 Ill. 2d 115, 203 N.E.2d 897; *Handley v. Unarco Industries, Inc.* (1984), 124 Ill. App. 3d 56, 463 N.E.2d 1011.) We do, however, affirm the denial of Union's claim on a breach of contract basis. Union asks that this case be affirmed "either on an estoppel or a breach of contract theory." Implicitly, Union recognizes that a party may not recover on both. (*Cf. Wagner Excello Foods, Inc. v. Fearn International, Inc.* (1992), 235 Ill. App. 3d 224.) Because we have determined that the evidence, as a matter of law, establishes that Union is entitled to recover under an estoppel theory, it necessarily follows that it cannot also recover under a breach of contract theory. For that reason, the order denying summary judgment to Union on count IV is also affirmed. For these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA* and RAKOWSKI, JJ., concur.

---

*Justice Rosemary LaPorta participated in oral argument before her death. Justice Daniel McNamara was substituted on the panel. He has listened to the oral argument tape and has read the briefs.