GENERAL ACCIDENT INSURANCE
COMPANY OF AMERICA

v.

AMERICAN NATIONAL
FIREPROOFING,
INC. et al.

No. 96–248–Appeal.

Supreme Court of Rhode Island.

July 31, 1998.

Patricia A. Buckley, for Plaintiff.

Jacqueline Bouchard, Johnston, Salvatore P. DeFusco, Jefferson W. Leath, Jr., for Defendants.

Before WEISBERGER, C.J., and LEDERBERG, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case began as a declaratory judgment action brought by General Accident Insurance Company of America (General Accident), seeking construction and application of a general liability insurance policy issued by General Accident to Cuddy Construction Corporation (Cuddy Construction). The central issue was whether the policy covered claims submitted by American National Fireproofing, Inc. (American). A justice of the Superior Court determined that it did not and further found that there were no other policies issued by General Accident that would provide the coverage American was requesting. For the following reasons we affirm the judgment and deny and dismiss this appeal.

### I

### Facts and Travel

In October of 1985, Michael Cuddy, president of Cuddy Construction, submitted an application for insurance to General Accident through Edward A. Rowan, Jr. (Rowan), the vice president and employee of the Wilson Agency, Inc. (Wilson). Pursuant to an agreement previously entered into by General Accident and Wilson, Wilson was authorized to solicit and submit applications for insurance and to issue and deliver policies, certificates, and binders of insurance on behalf of General Accident. The application submitted by Michael Cuddy sought commercial general liability coverage and excess coverage for Cuddy Construction. General Accident accepted the application for commercial general liability coverage and issued a policy numbered SMP 610915 with an effective coverage period from October 31, 1985, to October 31, 1986. This policy was subsequently renewed for an additional peri-

od from October 31, 1986, to October 31, 1987, but Cuddy Construction canceled it, effective June 11, 1987.[1] Although General Accident initially issued a binder for excess liability coverage, it declined to issue an excess policy to Cuddy Construction due to concerns it had about outstanding prior losses experienced by the company. General Accident notified Cuddy Construction of this decision on April 9, 1986. The excess coverage was in effect, however, from October 31, 1985, until April 21, 1986.

In addition to serving as president of Cuddy Construction, Michael Cuddy was also the operations manager for American. The business being performed by American was identical to Cuddy Construction's but unlike Cuddy Construction, American was a nonunion entity. Michael Cuddy maintains that American is an independent entity that is not affiliated with or a subsidiary of Cuddy Construction.

On June 10, 1985, American entered into a subcontract agreement with Ruscon Construction Company (Ruscon), whereby American was to provide fireproofing installation in connection with the construction of Windswept Villas, a residential complex on Kiawah Island, South Carolina, for which Ruscon was the general contractor. Paragraph 7 of the agreement required American to secure, to pay for, and to file with Ruscon certificates for liability damage and property damage insurance prior to commencing work on the project. Paragraph 15 of the agreement also specified that the limits of insurance were to be provided by American pursuant to paragraph 7: $500,000/$500,000 for bodily injury and $1 million for property damage.

On December 5, 1985, Michael Cuddy contacted Rowan and requested that a policy of insurance be issued naming American as the insured for the work it agreed to perform on the project. Michael Cuddy testified that he contacted Rowan personally to make the request because of his prior, long-standing business relationship with Rowan. Michael Cuddy further asserted that he specifically advised Rowan that he had formed a new, nonunion company named "American" to do the work on the South Carolina project and that he needed a separate insurance policy for American. Michael Cuddy maintains that he asked for a policy that covered the insurance requirements that were prescribed in the contract with Ruscon.

Accordingly Wilson issued a certificate of insurance dated December 5, 1985. The certificate listed Wilson as the producer, American as the insured, General Accident as the insurer, and Ruscon as the certificate holder. There were no policy numbers listed on the certificate, only the word "binder" appeared. The effective dates of coverage listed on the certificate were October 31, 1985, through October 31, 1986.

A second certificate of insurance, which bore the date August 5, 1986, was issued by Wilson. This second certificate also named Wilson as the producer, American as the insured, General Accident as the insurer, and Ruscon as the certificate holder. In contrast to the first certificate, however, the August 1986 certificate made reference to a policy number, SMP 610915. It is significant that the policy number and the period of coverage referenced on the second certificate are the same as those contained on the general-liability policy previously issued to Cuddy Construction by General Accident.

American began work on the South Carolina project on April 26, 1986, and completed it in August of 1986. After a hurricane in 1989 damaged a portion of the Windswept Villa residential complex, the 1986 installation of the fireproofing by American was discovered to be defective. Windswept Villas III Horizontal Property Regime, Inc. (Windswept), an association of homeowners who own the residences constructed by Ruscon and American as part of the 1986 project, learned that they would be required to tear down portions of the completed construction in order to remedy the failings of the fireproofing. As a result Windswept sued Ruscon and American in South Carolina. Windswept and Ruscon eventually settled a portion of the lawsuit and Ruscon assigned its claims for indemnification from American to Windswept.

1. The renewed policy carried the number SMP 611074.

On or about November 1, 1991, American was served with two separate complaints that were filed in the state of South Carolina. These civil actions alleged that American had negligently installed fireproofing on the Windswept Villas project. By letter dated December 27, 1991, both actions were forwarded to General Accident by American's attorney. This notification letter requested that General Accident obtain counsel to represent American in these matters in accordance with the insurance coverage that it had obtained from Wilson prior to commencing work on the project. General Accident responded by letter dated January 8, 1992, in which it acknowledged the existence of a policy but stated that coverage may not be available under the terms and conditions of the policy.

On April 10, 1992, General Accident sent a second letter to American, advising it that the policy limits on the Cuddy Construction policy SMP. 610915 had been exhausted. There was no reference to the nonexistence of coverage for American. On May 3, 1993, General Accident advised American for the first time that there was no record of that policy of insurance having been issued to American.

Thereafter, General Accident filed this declaratory judgment action seeking construction and application of the general liability insurance policy issued to Cuddy Construction in October of 1985. General Accident maintained that this action was necessitated by its receipt of American's demand for defense relative to the suits filed in South Carolina. Windswept was allowed to intervene in the case. In light of allegations of negligence in failing to place or broker insurance for American, Rowan and Wilson subsequently were joined as third-party defendants. The matter was reached for trial on October 23, 1995.

During a conference conducted the morning of trial, American, Cuddy Construction, and Windswept indicated for the first time that they no longer were seeking coverage for American under the Cuddy Construction policy SMP 610915 but under "separate" policies issued to American, as evidenced by the August 5, 1986, and the December 5, 1985

certificates of insurance. The parties took the position that General Accident is estopped from denying coverage as evidenced by these certificates of insurance because they were relied upon by the parties to their detriment. The parties did state, however, that since Cuddy Construction had also been named a party to the pending actions in South Carolina, they were requesting in addition that questions relating to the construction of or the application of policy SMP 610915 be submitted to the court.

On February 16, 1996, the trial justice delivered her decision in which she detailed the confusing, convoluted facts and travel of this case and ultimately determined that General Accident had no liability to American, Cuddy Construction, Windswept Villas, or Ruscon for damages caused by American's installation of fireproofing on the project. The trial justice found that although General Accident was estopped from denying the existence of coverage under SMP 610915, General Accident was not estopped from denying coverage on the basis of the terms of the contract. The trial justice further found that contrary to the position advanced by Cuddy Construction, American, and Windswept, the two certificates of insurance did not constitute separate and distinct contracts for coverage. Rather the trial justice found that the certificates merely evince that a contract or a policy was in effect. The first certificate constituted a temporary binder that was replaced for the same policy period by permanent coverage under SMP 610915 as referenced in the second certificate. Accordingly the trial justice found that the use to which the parties asked the court "to put estoppel is inappropriate and the [c]ourt will not make an improper application of the doctrine." This appeal ensued.

On appeal American, Cuddy Construction, and Windswept essentially argue that the trial court committed reversible error in (1) determining that General Accident cannot be estopped from denying coverage to American, (2) deciding that General Accident was not bound by the actions of its agents, Rowan and Wilson, and (3) placing the burden of proof in this declaratory judgment action

upon the insured, American, and the certificate holder, Ruscon.

## II

### Standard of Review

"In accordance with our well-settled standard of review, '[t]his Court will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties.'" *L.A. Ray Realty v. Town Council of Cumberland*, 698 A.2d 202, 207 (R.I.1997) (quoting *Harris v. Town of Lincoln*, 668 A.2d 321, 326 (R.I.1995)).

## III

### Analysis

#### A. Estoppel

■ The first issue presented by this appeal concerns whether an insurance carrier is estopped from denying coverage when an insurance agent, with authority to bind the insurer, issues a certificate of insurance. American, Cuddy Construction, and Windswept argue that Wilson, as the authorized agent of General Accident, issued certificates of insurance to American upon which American and Ruscon justifiably relied and that therefore, General Accident is precluded from denying the existence of the contracts or the coverage that they provide. General Accident maintains that the certificates upon which the parties rely do not evince separate and distinct contracts but rather demonstrate that American was added to the coverage under the pre-existing policy held by Cuddy Construction. We find the latter view to be more persuasive.

■ The doctrine of estoppel is an equitable doctrine that will operate to bar a person from denying liability when the party makes "'[a] promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance ... [and] injustice can be avoided only by enforcement of the promise.'" *Criterion*

*Leasing Group v. Gulf Coast Plastering & Drywall*, 582 So.2d 799, 800 (Fla.App.Dist.Ct. 1991). In the context of insurance coverage the insured must show "(1) that he was misled by the acts or statements of the insurer or its agent; (2) reliance by the insured on those representations; (3) that such reliance was reasonable; and (4) detriment or prejudice suffered by the insured based on the reliance." *Dumenric v. Union Oil Company of California*, 238 Ill.App.3d 208, 179 Ill.Dec. 398, 606 N.E.2d 230, 233 (1992). The relevant cases are clear, however, that the doctrine of estoppel cannot be used to enlarge coverage beyond that which is set out in the policy. *See Martinelli v. Travelers Insurance Companies*, 687 A.2d 443, 447 (R.I. 1996); *see also Brown Machine Works & Supply Co. v. Insurance Company of North America*, 659 So.2d 51, 54 (Ala.1995).

■ Applying these principles to the facts of the instant case, we conclude that the trial justice was correct in holding that estoppel was appropriate only as it related to policy SMP 610915. In response to Michael Cuddy's request for insurance, Wilson produced the December 5, 1985 certificate of insurance. This certificate clearly indicates, however, that it is only a binder. A binder is not an insurance policy but is generally taken to be a contract providing for interim insurance that covers the applicant until the insurance company's investigation of his or her insurability can be completed and a policy issued or the risk refused. 1 Lee R. Russ, *Couch on Insurance* 3d § 13.1 (1997). Wilson then produced a second certificate on August 5, 1986. This second certificate was much more specific than the first and indicated that general liability coverage, and not excess liability coverage, was being extended by General Accident to American under policy SMP 610915. Accordingly in the context of this case the only thing the doctrine of estoppel could do was prevent General Accident from denying coverage under SMP 610915.

American, Cuddy Construction, and Windswept would have us believe, however, that these certificates created two separate and distinct contracts for insurance. Not only is

this position contrary to the stance taken by the parties throughout the pleadings up and until the morning of trial, but it is also inconsistent with established precedent.

■ First, we note, as did the trial justice, that a certificate of insurance is not a separate and distinct independent contract but rather evidence of the underlying agreement that references the coverage of the policy in general terms. *See Lezak & Levy Wholesale Meats, Inc. v. Illinois Employers Insurance Company of Wausau,* 121 Ill.App.3d 954, 77 Ill.Dec. 419, 460 N.E.2d 475, 477 (1984); *Blackburn, Nickels & Smith, Inc. v. National Farmers Union Property and Casualty Co.,* 482 N.W.2d 600, 603 (N.D.1992). "A Certificate of Insurance is an insurance company's written statement to its customer that he has insurance coverage, and the insurance company is estopped from denying *coverage that the Certificate of Insurance states is in effect.*" *Blackburn,* 482 N.W.2d at 603. (Emphasis added.) Accordingly the certificates issued in this case were issued as a general statement of coverage.

Moreover, there was nothing ambiguous or obscure in the terms of these certificates. Both certificates clearly state the certificate is "issued as a matter of information only and confers no rights upon the certificate holder" and "does not amend, extend, or alter the coverage afforded by the policies below." The certificates further provide that:

> "Policies of insurance *listed below* have been issued to the insured named above for the policy period indicated. * * * The insurance afforded by the policies described herein is subject to all the terms, exclusions, and conditions of such policies." (Emphasis added.)

There was no evidence that Michael Cuddy or any representative from Ruscon did not understand the terms of these certificates or that they were unable to acquaint themselves with their terms of the certificates. *See Martinelli,* 687 A.2d at 445 (court will not "depart from the literal language of the policy absent a finding that the policy is ambiguous").

Accordingly we perceive no evidence that would support a conclusion that General Accident misled Cuddy Construction, American, or Ruscon into believing that American had coverage under any policy other than SMP 610915 or that the parties justifiably relied on the certificates as separate and independent contracts. On the contrary we find it very telling that until the morning trial all of the parties indicated that coverage for American was being sought under policy SMP 610915. Therefore, we affirm the trial justice and conclude that the application of the doctrine of estoppel is inappropriate to establish a separate contract.

## B. Agency

■ The parties also argue that the trial justice erred in determining that Rowan and Wilson were acting as American's agents and that their actions, namely, their failure to procure adequate insurance coverage for American, cannot be imputed to General Accident. American, Cuddy Construction, and Windswept argue that the agency agreement clearly indicates that Wilson was acting as the agent of General Accident in soliciting and submitting applications for insurance and issuing and delivering policies, certificates, and binders of insurance on behalf of General Accident. As General Accident points out, however, the trial justice did not find that Rowan and Wilson were acting solely as agents of American but rather that they were serving both American and General Accident in a dual capacity. We discern no error in this determination and note that it is in accord with prior holdings of this Court.

In *Etheridge v. Atlantic Mutual Insurance Co.,* 480 A.2d 1341, 1346 (R.I.1984), we recognized " 'that a person might simultaneously represent two independent principals.' " We further held that in instances in which an insurance agent represents several companies and has the freedom to choose the company with which he would place an insurance policy, the individual was the agent of the insured and not the insurer. *Id.*

■ In this case the trial justice found that Rowan and Wilson were independent insurance brokers placing insurance with multiple companies, not only General Accident. Therefore, to the extent that they were procuring insurance for Cuddy Con-

struction and American at Michael Cuddy's request, they were acting as his agent. Failure to carry out this duty in accordance with Michael Cuddy's request constitutes a breach of their duty to him and cannot be imputed to General Accident. In issuing the certificate, however, Wilson and Rowan were acting as General Accident's agents pursuant to the agency agreement. Accordingly, to the extent that these certificates evince liability coverage, General Accident is bound by the terms of the underlying policy.

## C. Burden of Proof

■ Cuddy Construction, American, and Windswept next argue that the trial justice erred in placing the burden of proof upon American and Ruscon instead of upon General Accident. They maintain that in a declaratory judgment action to determine whether an insurance policy covers a pending claim, the burden of proving the absence of coverage rests upon the insurer. We disagree and note that in presenting this argument, the parties fail to recognize that, first and foremost, they were required to establish the existence of an insurance policy and the terms of the contract under which they claim they are entitled to relief.

■ The law in this area is well-settled. "The burden of proof rests upon the party who asserts the affirmative of an issue and this burden never shifts." 19 *Couch on Insurance* 2d § 79,315 (1981). Generally speaking, the insured seeking to establish coverage bears the burden of proving a prima facie case, including but not limited to the existence and validity of a policy, the loss as within the policy coverage, and the insurer's refusal to make payments as required by the terms of the policy. *See id.; see also Providence Journal Co. v. Travelers Indemnity Co.*, 938 F.Supp. 1066, 1073 (D.R.I.1996). The insurer then bears the burden of proving the applicability of policy exclusions and limitations in order to avoid an adverse judgment but only *after* the insured has sustained its burden and established its prima facie case. *See* 19 *Couch on Insurance* 2d at § 79.315

Although it is true that General Accident initially sought the declaratory judgment with respect to its obligations to American and Cuddy Construction consistent with policy SMP 610915, the focus of the action, and hence the burden of proof, shifted when American, Cuddy Construction, and Wilson indicated that they were seeking coverage under two separate, independent contracts that General Accident alleged were evinced by the two certificates of insurance. Accordingly American, Cuddy Construction, and Windswept were required to prove the existence of an insurance policy and the terms of that agreement. Establishing these facts is obviously a condition precedent to determining the breadth of coverage. The trial justice found, and we agree, that the parties failed to establish the existence of any policy other than SMP 610915. Thus not only does the existence of this policy control the result in this case but its terms and exclusions govern the coverage available to the parties.

## D. SMP 610915

Having determined that the only coverage available to either Cuddy Construction or American is derived from policy SMP 610915, we need only look at the questions of whether the damages to the property are covered by the terms of that policy and if so, whether General Accident has any affirmative defenses, including exclusions to and limitations of the policy, that would bar coverage. The trial justice analyzed the applicable policy provisions and concluded that the faulty installation of the fireproofing in 1986 was an occurrence within the terms of the policy but that the damage to the building that Windswept alleges will occur as a result of the remedial work necessary falls within the policy's exclusion for "restoration, repair, or replacement." She thereupon found that General Accident had a valid defense to coverage under the policy. General Accident has challenged a portion of this ruling and urges this Court to reverse that part of the trial justice's decision that declares that:

"[t]he Court finds that the occurrence under the policy provisions was the faulty installation of the fireproofing which took place in 1986. The Court finds that the third party, Windswept, suffered an injury

at that time, though that injury was not discovered until 1989."

General Accident correctly points to this Court's decision in *CPC International, Inc. v. Northbrook Excess & Surplus Insurance Co.,* 668 A.2d 647, 650 (R.I.1995), in which we clearly stated that under Rhode Island law, an occurrence under a general liability policy happens when the property damage "manifests itself or is discovered or in the exercise of reasonable diligence is discoverable." Nevertheless Windswept, Cuddy Construction, and American argue that this issue is not properly before the Court because it was not argued before the trial justice. Windswept further asserts that if the Court does consider this argument, we must apply South Carolina law, which contrary to this Court's opinions holds that a continuous trigger of coverage exists so that an insurance carrier is responsible for an injury that occurs during the coverage period, regardless of when it is discovered. *See Joe Harden Builders, Inc. v. Aetna Casualty and Surety Co.,* 326 S.C. 231, 486 S.E.2d 89 (1997). Windswept maintains that South Carolina decisional law is the appropriate choice of law by virtue of § 38–61–10 of the South· Carolina Code, which provides:

> "All contracts of insurance on property, lives, or interest in this State are considered to be made in this State, and all contracts of insurance the applications for which are taken within this State are considered to have been made within this State and are subject to the laws of the State."

After a review of the record we are satisfied that the trial justice recognized the choice-of-law issue but declined to address it, finding instead that the exclusions under the policy were applicable, thus barring recovery for the claims at issue. "The conflict between the law relating to [when an occurrence is] trigger[ed] is the only conflict which is apparent from the record, and as we shall see, the [c]ourt determined it need not meet that issue in this case." We agree with this determination and decline to reach the choice-of-law issue as well.

■ The exclusion provision in issue in this policy specifically excludes from coverage

> "(d) to that particular part of any property, not on premises owned by or rented to the insured,
>
> \*      \*      \*      \*      \*      \*
>
> (iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured."

The trial justice found, and we agree, that the work involved in correcting the inadequacy of the fireproofing clearly fell within the plain meaning of "restoration, repair or replacement" of the property made necessary by the faulty workmanship of American. Windswept disputes this finding and suggests that commercial general liability insurance policies only exclude coverage for repair, restoration, or replacement of the insured's work product and not other consequential damages. Therefore, Windswept argues that this exclusion should only apply to replacement of American's fireproofing materials and not to the other consequential damages involved in actually performing the· replacement. We reject this interpretation of the insurance agreement and are satisfied that the trial justice properly determined the exclusion provision applied to the claims in this case on the basis of the record before her:

> "In an effort to avoid the exclusion, the defendants and intervenor have argued \* \* \* that the exclusion is inapplicable. They suggest that the losses will be a consequence of the remediation of the fireproofing, but not the 1986 installation. Assuming for a moment the validity of this rationale, we see that it is really of no help to the defendants and the intervenor. If the event which will cause the future property damage is the future remediation, and neither one are [sic] necessitated by American National's faulty performance, then we have an occurrence or an event taking place well after the policy period and property damage taking place well after the policy period. By distancing the damages from the 1986 installation by American National, the defendants and the interve-

nors necessarily distance themselves from the coverage provided by the insuring agreements in this policy. This third party liability insurance only affords coverage for occurrences for which the insured can be held legally liable. If the anticipated property damage is not necessitated by American National's faulty performance, then we have no occurrence for which American National can be held legally liable.

\*   \*   \*   \*   \*   \*

"But if the injury is the placement of the defective fireproofing, then the work performed exclusion applies, and around and around we go again."

Accordingly, although the trial justice was incorrect in her determination that the faulty installation of the fireproofing constituted an occurrence under the policy provisions, she correctly concluded that the damages facing Windswept are subject to the work performance exclusions contained in the policy for which no coverage is available.

### IV

### Conclusion

We conclude that the certificates of insurance issued to American by Wilson on behalf of General Accident reflect coverage extended to American under SMP 610915. They do not constitute independent contracts of insurance issued by General Accident to American, nor shall we utilize the principle of estoppel to imply a contract in the context of this case. The damages facing Windswept are subject to the work performance exclusions contained in the policy SMP 610915 for which no coverage is available. Therefore, General Accident is relieved of any obligation to cover the claims.

The appeal is denied and dismissed and the judgment appealed from is affirmed. The papers in the case are remanded to the Superior Court.

BOURCIER, J., did not participate.