December 9, 2022

Atmed Treatment Center, Inc.        :

v.        :

The Travelers Indemnity Company.        :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email:    opinionanalyst@courts.ri.gov,    of    any typographical  or  other  formal  errors  in  order  that corrections may be made before the opinion is published.

Atmed Treatment Center, Inc.　　　:

v.　　　　　:

The Travelers Indemnity Company.　　:

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  This insurance coverage dispute came before the Supreme Court on October 4, 2022, on appeal by the plaintiff, Atmed Treatment Center (Atmed), seeking review of a Superior Court final judgment and order granting summary judgment in favor of the defendant, The Travelers Indemnity Company (Travelers), and denying Atmed's motion for summary judgment.  For the reasons set forth herein, we affirm the judgment of the Superior Court in part and vacate in part.

## Facts and Travel

The material facts in this case are not in dispute.  This controversy arose from an allegation of racial discrimination that purportedly occurred at the Atmed

- 1 -

Treatment Center in Johnston, Rhode Island, on July 14, 2015. On November 23, 2015, Folosade Olofinlade, a woman of Nigerian national origin, filed a charge of discrimination (charge) with the Rhode Island Commission for Human Rights (commission). In the charge, Olofinlade alleged that, on July 14, 2015, she and her two-and-one-half-year-old daughter had accompanied her brother-in-law to the Atmed Treatment Center in order for him to be evaluated for symptoms of illness. At the time, Olofinlade was thirty-eight weeks pregnant. According to Olofinlade, she informed Atmed that her brother-in-law had a history of malaria and that that was likely the cause of his illness. Ms. Olofinlade alleged that she and her daughter were then quarantined in a small room with her brother-in-law for approximately four hours without access to food, water, or a restroom. She also alleged overhearing an employee declare on the telephone that Atmed might have its first case of Ebola,[1] despite having no facts to support such a statement.

---

[1] "Ebola virus disease (EVD) is a deadly disease with occasional outbreaks that occur mostly on the African continent." Centers for Disease Control and Prevention, *What is Ebola Virus Disease?*, https://www.cdc.gov/vhf/ebola/about.html (last visited October 13, 2022). "The course of the illness typically progresses from 'dry' symptoms initially (such as fever, aches and pains, and fatigue), and then progresses to 'wet' symptoms (such as diarrhea and vomiting) as the person becomes sicker." Centers for Disease Control and Prevention, *Ebola (Ebola Virus Disease) Signs and Symptoms*, https://www.cdc.gov/vhf/ebola/symptoms/index.html (last visited October 13, 2022). "The virus spreads through direct contact (such as through broken skin or mucous membranes in the eyes, nose, or mouth) * * *." Centers for Disease Control and Prevention, *Ebola (Ebola Virus Disease) Transmission*, https://www.cdc.gov/vhf/ebola/transmission/index.html (last visited October 13, 2022).

According to Olofinlade, after four hours of confinement, she and her family members were transported to a local hospital in accordance with "Hazmat protocol."[2] In her charge, Olofinlade alleged that Atmed's conduct "caused a serious delay in transport, undue stress, panic, anxiety, confusion, and fear for both [her] and [her] child." Ms. Olofinlade averred that her brother-in-law was never diagnosed with Ebola or any other infectious disease. According to Olofinlade, the events that transpired at Atmed "indicate[d] that both [she and her daughter] were treated in a disparate manner on the basis of [their] national origin, race and color." Ms. Olofinlade claimed that Atmed's conduct constituted discrimination in violation of Title VII of the Civil Rights Acts of 1964, the Rhode Island Civil Rights Act, and other state and federal laws.

Atmed notified Travelers of Olofinlade's charge and demanded that Travelers defend it against the claims in accordance with a commercial general liability insurance policy (policy) that Atmed held with Travelers. The policy was effective from June 2015 to June 2016 and provided Atmed coverage for commercial general liability. Among the sections of the policy pertinent to this lawsuit are:

---

[2] According to Olofinlade, multiple emergency personnel from the Johnston Fire Department and the Johnston Police Department responded to the treatment center to handle the transfer. Ms. Olofinlade alleged that the "emergency personnel blocked all exits to the treatment center while 'Hazmat team members' entered the center in order to mask [her and her daughter] and 'prepare' [them] for transfer."

"SECTION I – COVERAGES

"COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

"1. Insuring Agreement

"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.

"* * *

"SECTION V – DEFINITIONS

"* * *

"18. 'Suit' means a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged. 'Suit' includes:

"a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

"b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

"* * *

"XTEND ENDORSEMENT

"* * *

"EXCLUSION – DISCRIMINATION

"* * *

"1. COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY – is amended by adding the following additional exclusion:

- 4 -

"(This Insurance does not apply to:)

"'Bodily Injury' resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

"2. COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY – is amended by adding the following additional exclusion:

"(This insurance does not apply to:)

"'Personal injury' resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition."

In response to Atmed's demand, Travelers informed Atmed by letter that Olofinlade's charge was not covered under the terms of the policy. Travelers explained that, in its view, the allegations made in Olofinlade's charge "d[id] not set forth a claim for 'bodily injury' or 'property damage' caused by an 'occurrence.'"[3] Travelers also stated that the "Expected Or Intended Injury" exclusion[4] and the

___

[3] The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

[4] The policy provides that the insurance does not apply to "Expected Or Intended Injury," defined as "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." The policy further provides that "[t]his exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property."

"Discrimination" exclusion both precluded coverage. To support its decision to disclaim coverage, Travelers quoted numerous provisions of the policy. Significantly, however, Travelers omitted certain relevant portions of the policy that are germane to our analysis. Atmed retained counsel to defend.

Ms. Olofinlade obtained a right-to-sue authorization from the commission and filed an action against Atmed in the Superior Court on behalf of herself and her daughter on October 10, 2017.[5] The operative complaint against Atmed consisted of various claims sounding in discrimination and tort. Specifically, the amended complaint set forth claims for: (1) discrimination in violation of the Rhode Island Civil Rights Act of 1990 (RICRA), G.L. 1956 chapter 112 of title 42; (2) negligence/premises liability; (3) intentional infliction of emotional distress; (4) false imprisonment; (5) discrimination in violation of Title VI of the Civil Rights Act of 1964; and (6) discriminatory practices prohibited in places of public accommodation in violation of G.L. 1956 chapter 24 of title 11. Atmed continued with retained counsel to defend it against Olofinlade's suit. On January 17, 2019, Atmed removed the case to the United States District Court for the District of Rhode Island, where it remains pending.

---

[5] Ms. Olofinlade filed an amended complaint on January 9, 2019. The amended complaint also lists the Town of Johnston and Joseph Chiodo, in his capacity as Finance Director for the Town of Johnston, as defendants.

It was not until August 20, 2019, that Atmed notified Travelers of Olofinlade's suit and demanded that Travelers undertake its defense.[6]  In a letter to Atmed dated September 10, 2019, Travelers agreed to participate in Atmed's defense against Olofinlade's claims, subject to a reservation of rights.  Travelers, however, has not reimbursed Atmed for its legal costs incurred before August 20, 2019.

On December 5, 2019, Atmed commenced this action seeking a declaratory judgment that Travelers had a duty to defend Atmed before the commission (count one).  The complaint also asserted a breach-of-contract claim based upon Travelers' disclaimer of coverage and its explanation for its decision to disclaim coverage (count two), and insurer bad faith (count three).[7]

On March 19, 2020, Atmed filed a motion for partial summary judgment as it relates to counts one and two.  Travelers filed an objection along with a cross-motion for summary judgment.  A hearing on the parties' cross-motions for summary judgment was held in the Superior Court on July 22, 2020.  At the conclusion of the hearing, the trial justice reserved decision on the motions.  On September 18, 2020,

---

[6] We note that Atmed waited approximately one year and eleven months to notify Travelers of Olofinlade's action.

[7] Travelers filed an answer on January 14, 2020, in which it denied the allegations and asserted several affirmative defenses.  On February 24, 2020, Travelers filed a motion to sever and stay the bad-faith claim, and Atmed stipulated that count three could be severed and stayed.

the trial justice issued a bench decision granting Atmed's motion as to liability only (original decision). The trial justice deferred ruling on Atmed's recoverable damages, explaining that she would give Travelers the opportunity to dispute the reasonableness of the attorneys' fees Atmed had incurred. The trial justice directed the parties to refrain from preparing an order on the cross-motions for summary judgment until the issue of damages was resolved.

On November 3, 2020—before an order entered—Travelers filed a motion for reconsideration, or, alternatively, for separate and final judgment. Atmed objected and a hearing was held on December 17, 2020. The trial justice proceeded to issue a second bench decision, in which she granted Travelers' motion for reconsideration; granted Travelers' cross-motion for summary judgment; and denied Atmed's motion for partial summary judgment. Conflicting (and confusing) orders subsequently entered on April 12, 2021, that culminated in an order granting summary judgment for Travelers on all counts, including count three that had been severed and stayed.[8] Notably, Travelers had not moved for summary judgment as to count three of the complaint. On April 15, 2021, Atmed filed a timely notice of appeal. In deciding

---

[8] An order granting Atmed's partial motion for summary judgment as to counts one and two was entered, followed by an order that granted Travelers' motion for reconsideration, vacated the court's previous order, and denied Atmed's motion for partial summary judgment, then granted Travelers' cross-motion for summary judgment as to counts one and two, and finally, granted summary judgment in favor of Travelers on count three—which had been severed and stayed—and entered judgment in favor of Travelers.

this case, we touch upon several of the hallmarks of summary-judgment jurisprudence.

**Standard of Review**

"Although we stress that the Superior Court Rules of Civil Procedure say nothing [about] a motion to reconsider, we do note that 'a party's motion to reconsider has been treated by this Court as a motion to vacate a judgment under Rule 60(b).'" *McLaughlin v. Zoning Board of Review of Town of Tiverton*, 186 A.3d 597, 604 n.9 (R.I. 2018) (quoting *Turacova v. DeThomas*, 45 A.3d 509, 514-15 (R.I. 2012)). "It is well settled that [a] motion to vacate a judgment is left to the sound discretion of the trial justice * * *." *Renewable Resources, Inc. v. Town of Westerly*, 110 A.3d 1166, 1171 (R.I. 2015) (quoting *Berman v. Sitrin*, 101 A.3d 1251, 1260 (R.I. 2014)). Whether the trial justice had the authority to grant Travelers' motion for reconsideration and vacate her original decision presents a question of law concerning which we undertake *de novo* review. *See National Education Association Rhode Island v. Town of Middletown by and through Dible*, 210 A.3d 421, 425 (R.I. 2019) ("[T]his Court reviews questions of law *de novo*.").

"This Court reviews a grant of summary judgment *de novo*." *Morgan v. Bicknell*, 268 A.3d 1180, 1182 (R.I. 2022) (quoting *Sullo v. Greenberg*, 68 A.3d 404, 406 (R.I. 2013)). "Examining the case from the vantage point of the trial justice who passed on the motion for summary judgment, we view the evidence in the light most

favorable to the nonmoving party, and if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law, we will affirm the judgment." *Ballard v. SVF Foundation*, 181 A.3d 27, 34 (R.I. 2018) (brackets omitted) (quoting *Sullo*, 68 A.3d at 406-07). "Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Webster Bank, National Association v. Rosenbaum*, 268 A.3d 556, 558 (R.I. 2022) (quoting *Sola v. Leighton*, 45 A.3d 502, 506 (R.I. 2012)). "'Where the facts suggest only one reasonable inference[,]' the trial justice may treat the issue as a matter of law." *Shannahan v. Rhode Island Interlocal Risk Management Trust*, 269 A.3d 737, 739 (R.I. 2022) (quoting *Deutsche Bank National Trust Company, for Registered Holders of Ameriquest Mortgage Securities, Inc. v. McDonough*, 160 A.3d 306, 311 (R.I. 2017)).

"Additionally, 'whether an ambiguity exists in an insurance policy is a question of law.'" *Bacon Construction Co., Inc. v. Arbella Protection Insurance Company, Inc.*, 208 A.3d 595, 598-99 (R.I. 2019) (brackets omitted) (quoting *Merrimack Mutual Fire Insurance Company v. Dufault*, 958 A.2d 620, 625 (R.I. 2008)). "This Court reviews a trial justice's conclusions on questions of law *de novo*." *Id.* at 599 (quoting *Beacon Mutual Insurance Company v. Spino Brothers,*

*Inc.*, 11 A.3d 645, 649 (R.I. 2011)). "Accordingly, we review a trial justice's interpretation of a contract *de novo*." *Id.* (quoting *Beacon Mutual Insurance Company*, 11 A.3d at 649). In doing so, "[t]his Court interprets the terms of an insurance policy according to the same rules of construction governing contracts." *Town of Cumberland v. Rhode Island Interlocal Risk Management Trust, Inc.*, 860 A.2d 1210, 1215 (R.I. 2004). "We look at the four corners of a policy, viewing it 'in its entirety, affording its terms their plain, ordinary and usual meaning.'" *Id.* (quoting *Casco Indemnity Co. v. Gonsalves*, 839 A.2d 546, 548 (R.I. 2004)). "The test to be applied is not what the insurer intended * * *, but what the ordinary reader and purchaser would have understood [the language] to mean." *Allstate Insurance Company v. Ahlquist*, 59 A.3d 95, 98 (R.I. 2013) (quoting *Pressman v. Aetna Casualty and Surety Co.*, 574 A.2d 757, 760 (R.I. 1990)). "[W]e shall not depart from the literal language of the policy absent a finding that the policy is ambiguous." *Mallane v. Holyoke Mutual Insurance Company in Salem*, 658 A.2d 18, 20 (R.I. 1995). "We refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present." *Beacon Mutual Insurance Company*, 11 A.3d at 649 (quoting *Lynch v. Spirit Rent-A-Car, Inc.*, 965 A.2d 417, 425 (R.I. 2009)).

**Analysis**

On appeal, Atmed asserts that the trial justice erred in granting Travelers'

motion for reconsideration and then granting summary judgment in favor of

Travelers. We address each claim of error in turn.

**Reconsideration**

First, we look to Atmed's argument that the trial justice erred in granting

Travelers' motion for reconsideration. Atmed contends that the trial justice erred in

determining that Travelers' motion for reconsideration was not governed by Rule

60(b) of the Superior Court Rules of Civil Procedure.[9] Specifically, Atmed argues

---

[9] Rule 60(b) of the Superior Court Rules of Civil Procedure, entitled "Relief from Judgment or Order" provides:

> "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
>> "(1) Mistake, inadvertence, surprise, or excusable neglect;
>> "(2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
>> "(3) Fraud, misrepresentation, or other misconduct of an adverse party;
>> "(4) The judgment is void;
>> "(5) The judgment has been satisfied, released, or discharged, or a prior judgment upon which the judgment is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
>> "(6) Any other reason justifying relief from the operation of the judgment.

that the trial justice should have treated Travelers' motion for reconsideration as a motion to vacate the judgment pursuant to Rule 60(b) because the trial justice's original decision had a "substantial element of finality in that the court had decided the issues of Travelers' duty to defend and Travelers' liability for breach of the contract of insurance." Atmed argues, in the alternative, that even if the trial justice properly determined that Travelers' motion for reconsideration did not align with Rule 60(b), she nevertheless exceeded her authority by vacating her original decision. Travelers, on the other hand, argues that the trial justice did not err in granting its motion for reconsideration and vacating her original decision because, in the posture of this case, she had the "power to hear Travelers' motion for reconsideration and modify her previous interlocutory order." We agree with Travelers.

At the December 17, 2020 hearing, the trial justice concluded that Travelers' motion for reconsideration need not meet the requirements of Rule 60(b) because

"The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one (1) year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

- 13 -

the original decision was an interlocutory order rather than a final judgment. The trial justice explained that, because this Court has made clear that a trial justice is vested with the authority to modify interlocutory orders, she had the discretion to modify the original decision.

"With respect to a motion to reconsider [a prior] ruling, '[t]he Superior Court Rules of Civil Procedure, similar to the Federal Rules of Civil Procedure, do not provide for a motion to reconsider.'" *Yi Gu v. Rhode Island Public Transit Authority*, 38 A.3d 1093, 1099 (R.I. 2012) (quoting *School Committee of Cranston v. Bergin-Andrews*, 984 A.2d 629, 649 (R.I. 2009)). "This Court, however, applies a liberal interpretation of the rules [in order] to 'look to substance, not labels.'" *Bergin-Andrews*, 984 A.2d at 649 (quoting *Sarni v. Meloccaro*, 113 R.I. 630, 636, 324 A.2d 648, 651 (1974)). Thus, "we have allowed 'motions to reconsider' to be treated as motions to vacate under Rule 60(b) * * *." *Yi Gu*, 38 A.3d at 1099 (quoting *Bergin-Andrews*, 984 A.2d at 649). "However, Rule 60(b) generally is available 'in instances where relief is sought from a final judgment, order, or proceeding.'" *Turacova*, 45 A.3d at 515 (quoting *Murphy v. Bocchio*, 114 R.I. 679, 682, 338 A.2d 519, 522 (1975)). "The finality contemplated by Rule 60(b) envisions an order that definitely terminates the litigation and leaves nothing more for the court to decide." *Murphy*, 114 R.I. at 683, 338 A.2d at 523. "If it appears from the order that something remains to be done before the rights of the litigants are fixed, the requisite

- 14 -

finality to which the rule refers has not been reached." *Id.* "A decree, we [have] stated, cannot be described as being final when a person in whose favor the decree runs must return to court for further assistance." *Id.* at 682, 338 A.2d at 522.

It necessarily follows that, if Rule 60(b) applies to final judgments or orders, it does not apply to interlocutory orders. *See Renewable Resources, Inc.*, 110 A.3d at 1170-71 (quoting *Murphy*, 114 R.I. at 682, 338 A.2d at 522) ("Rule [60(b)] 'is applicable only in instances where relief is sought from a final judgment, order, or proceeding.' * * * Because a preliminary injunction is merely an interlocutory order, as opposed to a final judgment, Rule [60(b)] was erroneously invoked."). In contrast to final judgments, "[i]nterlocutory orders are those that are provisional or temporary, or that decide some intermediate point or matter but are not a final decision of the whole matter." *Coit v. Tillinghast*, 91 A.3d 838, 843 (R.I. 2014) (quoting *Simpson v. Vose*, 702 A.2d 1176, 1177 (R.I. 1997)).

In the present case, we conclude that the trial justice was correct in determining that Travelers' motion for reconsideration was not governed by Rule 60(b) because the original decision simply was not final. Although the trial justice granted Atmed's motion for summary judgment as to liability, she did not rule on damages and specifically asked the parties to refrain from preparing any orders until the issue of damages had been resolved. *See Turacova*, 45 A.3d at 515-16 (holding that order was not final judgment where court anticipated parties would draft

proposed order and come before it once more for entry of mutually agreed upon order and where order failed to set forth monetary award); *see also Webster v. Perrotta*, 774 A.2d 68, 75 (R.I. 2001) (holding that judgments by default that conclusively established liability of defendants were not final judgments because litigation was not terminated and case was ordered to hearing on oral proof of claim).

We are unpersuaded by Atmed's contention that, even if Travelers' motion for reconsideration was not governed by Rule 60(b), the trial justice nevertheless erred by vacating the original decision. Atmed argues that, although a trial justice holds the inherent power to *modify* his or her interlocutory orders, he or she does not have the inherent power to *vacate* those orders.

A trial justice retains the authority "to modify any interlocutory judgment or order prior to final judgment." *Renewable Resources, Inc.*, 110 A.3d at 1171 (quoting *Murphy*, 114 R.I. at 682, 338 A.2d at 522). Because a trial justice has plenary authority to afford relief from interlocutory judgments, we conclude that the trial justice was free to vacate her original decision upon concluding that she may have erred. *See id.* (quoting *Greene v. Union Mutual Life Insurance Company of America*, 764 F.2d 19, 22 (1st Cir. 1985)) (acknowledging "the inherent power of [the trial court] to afford such relief from interlocutory judgments * * * as justice requires"); *see also Fernandez-Vargas v. Pfizer*, 522 F.3d 55, 61 n.2 (1st Cir. 2008) ("While the Federal Rules do not provide for a 'motion to reconsider,' a district court

- 16 -

has the inherent power to reconsider its interlocutory orders, and we encourage it to do so where error is apparent."). Although this policy is particularly suitable to cases in which the trial justice, upon reflection, has concluded that the first decision was erroneous, a motion for reconsideration should not be undertaken lightly. Because the prevailing party has a stake in the original decision, when confronted with a motion to reconsider, a trial justice must balance the interests of the parties against a thoughtful determination that a change of course is proper under the circumstances, a serious event to all concerned.

We emphasize, however, that after a trial justice has granted a motion to reconsider, he or she must rely not on the parties' after-the-fact arguments as set forth in their papers in support of or opposition to the motion to reconsider, but rather on the arguments originally made. *See Jackson v. Medical Coaches*, 734 A.2d 502, 505 (R.I. 1999) ("Rule 60(b) does not constitute a vehicle for the motion justice to reconsider the previous judgments in light of later-discovered legal authority that could have and should have been presented to the court before the original judgments entered."); *see also Cochran v. Quest Software, Inc.*, 328 F.3d 1, 11 (1st Cir. 2003) ("It is generally accepted that a party may not, on a motion for reconsideration, advance a new argument that could (and should) have been presented prior to the district court's original ruling.").

**Summary Judgment**

We next turn to Atmed's argument that the trial justice erred in granting Travelers' motion for summary judgment. Atmed specifically contends that the trial justice erred (1) in determining that a charge of discrimination filed with the commission did not constitute a "suit" to which the insurance policy applies; (2) in concluding that the discrimination exclusion within the insurance policy nullified Travelers' duty to defend; (3) in determining that Travelers could not have breached the insurance contract by misrepresenting pertinent provisions of the insurance policy; and (4) in granting summary judgment as to count three of the complaint because it had been severed and stayed.

**A**

**The Discrimination Exclusion**

We first address whether the discrimination exclusion applies to Olofinlade's allegations before the commission. Atmed argues that the trial justice mistakenly ruled that Travelers had no duty to defend Atmed based on her finding that the allegations contained within Olofinlade's charge to the commission did not fall within the risk covered by the policy because Olofinlade alleged that her injuries resulted from, or were a consequence of, discrimination on the basis of race and national origin. We disagree. Because we conclude that the exclusion applies to

Olofinlade's charge of discrimination before the commission, we need not address whether the charge was a "suit" that the insurance policy covers.[10]

"It is well settled in Rhode Island that the 'pleadings test' is applied in order to ascertain whether an insurer has a duty to defend an insured." *Bacon Construction Co.*, 208 A.3d at 601 (quoting *Medical Malpractice Joint Underwriting Association of Rhode Island v. Charlesgate Nursing Center, L.P.*, 115 A.3d 998, 1003 (R.I. 2015)). "That test requires the trial court to look at the allegations contained in the complaint, and if the pleadings recite facts bringing the injury complained of within the coverage of the insurance policy, the insurer must defend irrespective of the insured's ultimate liability to the plaintiff." *Id.* (quoting *Progressive Casualty Insurance Company v. Narragansett Auto Sales*, 764 A.2d 722, 724 (R.I. 2001)). "Moreover, 'when a complaint contains a statement of facts which bring the case within or potentially within the risk coverage of the policy, the insurer has an

---

[10] "Generally speaking, the insured seeking to establish coverage bears the burden of proving a prima facie case, including but not limited to the existence and validity of a policy, the loss as within the policy coverage, and the insurer's refusal to make payments as required by the terms of the policy." *General Accident Insurance Company of America v. American National Fireproofing, Inc.*, 716 A.2d 751, 757 (R.I. 1998). "The insurer then bears the burden of proving the applicability of policy exclusions and limitations in order to avoid an adverse judgment but only *after* the insured has sustained its burden and established its prima facie case." *Id.* Thus, although Atmed had the initial burden of proving that the charge of discrimination was a "suit" to which the insurance policy applies, we need not resolve this issue because we conclude that Travelers has met its burden of proving that the discrimination exclusion is applicable.

unequivocal duty to defend.'" *Id.* (quoting *Medical Malpractice Joint Underwriting Association of Rhode Island*, 115 A.3d at 1004).

Relying on the "pleadings" test, Atmed asserts that Travelers has a duty to defend because the allegations raised are potentially within the risk covered by the policy. In particular, Atmed argues that, because Olofinlade alleged that she was confined wrongfully, there is potential liability for the tort of false imprisonment, a risk covered by the policy. Atmed contends that its "potential liability for injury arising out of false imprisonment is not linked to unlawful discrimination, as a matter of law." According to Atmed, if "Olofinlade were able to establish that Atmed, without justification, confined her in the manner she described, but could not show Atmed did that because of her national origin, race, or color, Atmed nevertheless could be held liable for the tort of false imprisonment." In other words, Atmed contends that its potential liability for false imprisonment is severable from its potential liability for discrimination.

The trial justice applied the pleadings test and determined that the allegations before the commission are precluded from coverage under the discrimination exclusion. The trial justice explained that the discrimination exclusion clearly states that the insurance policy "does not apply to bodily injury resulting from or as a consequence of discrimination * * *." Thus, the trial justice concluded that the

discrimination exclusion clearly places Olofinlade's claims of discrimination outside the scope of coverage of the policy. We agree with this reasoning.

The "pleadings test" requires this Court to focus on the allegations within the complaint—regardless of the insured's ultimate liability—to determine if the insurer has a duty to defend. *See Bacon Construction Co.*, 208 A.3d at 601. Applying the pleadings test, it is clear that the allegations contained within the charge to the commission bring Olofinlade's injuries within the constraints of the discrimination exclusion. Ms. Olofinlade alleged that she and her daughter were confined because of their national origin, race, and color, and as a result, suffered injury.[11] Under the statement of facts set forth in the charge of discrimination, the charge is not within, or even *potentially* within, the risk coverage of the policy because the allegations are a clear and definite assertion that Olofinlade and her daughter suffered injuries "resulting from or as a consequence of discrimination." Whether Atmed is ultimately liable to Olofinlade for the intentional tort of false imprisonment in a different forum is irrelevant in determining whether Travelers had a duty to defend against Olofinlade's charge before the commission, *see Bacon Construction Co.*, 208 A.3d at 601, a body statutorily charged with enforcing the state's anti-discrimination laws, with limits of jurisdiction. *See* 515 RICR 10-00-2.2. It is

---

[11] Travelers does not contend that the injuries alleged by Olofinlade—delay in transport, undue stress, panic, anxiety, confusion, and fear—are not within the definition of "bodily injury" or "personal or advertising injury."

- 21 -

therefore our opinion that Travelers had no duty to defend Atmed against Olofinlade's charge before the commission.

## B

## The Severed and Stayed Count Three

Lastly, we address whether the trial justice erred in granting summary judgment in favor of Travelers as to count three of the complaint. Travelers contends that the trial justice did not err in granting summary judgment as to count three because, it contends, this Court's precedent in *Zarella v. Minnesota Mutual Life Insurance Co.*, 824 A.2d 1249 (R.I. 2003), establishes that a plaintiff must first show that he or she is entitled to recover on the contract before proceeding against the insurer for the tort of insurer bad faith. Thus, Travelers asserts, because the trial justice found that Travelers had not breached the insurance contract, the trial justice properly granted summary judgment in Travelers' favor.

Atmed, on the other hand, argues that the procedural posture of *Zarella* is inapposite to the present case. Atmed distinguishes *Zarella* from the case at bar by pointing out that, in *Zarella*, a jury found no evidence of intentional misconduct by the insurer, and, therefore, judgment for the insurer was entered under Rule 50 of the Superior Court Rules of Civil Procedure. Thus, Atmed asserts, in *Zarella*, the jury had decided the merits of the plaintiff's bad-faith claim, unlike in the case on appeal. Atmed also argues that the trial justice erred in rejecting its argument that

- 22 -

Travelers breached the insurance contract by making misrepresentations of pertinent provisions of the policy. Specifically, Atmed contends that, by misrepresenting pertinent provisions of the policy within the denial letter, Travelers breached its contractual duty of good faith and fair dealing. Atmed asserts that such a breach constitutes a breach of the insurance contract. We agree with Atmed that the trial justice erred in granting summary judgment as to count three.

In count three of the complaint, Atmed set forth a claim for "[b]reach of [c]ontract ([i]nsurer [b]ad [f]aith)." Atmed alleged that in its denial letter, Travelers "purposely misrepresented the provisions of the policies that applied to and controlled Travelers' duty to defend Atmed" against the charge Olofinlade filed with the commission. Atmed further alleged in its complaint that Travelers had deceived Atmed by failing to inform Atmed that the definition of "personal injury" within the policy also includes claims based upon "false arrest, detention or imprisonment."[12]

In arguing against reconsideration, Atmed contended that the misrepresentations of the policy provisions within the denial letter constituted a breach of contract. When asked by the trial justice under which count of the complaint Atmed had alleged that Travelers had breached the contract by making misrepresentations of the policy in the denial letter, Atmed stated that its claim fell

---

[12] Atmed also alleged in count three that Travelers had violated G.L. 1956 § 9-1-33 when it "wrongfully and in bad faith refused to timely perform its obligations under the contract of insurance * * *."

- 23 -

under count three.  The trial justice ultimately concluded that, if Travelers was not found liable for breach of contract, Atmed could not maintain a bad faith claim, regardless of whether that claim is framed as one sounding in statutory bad faith or as a breach of the implied duty of good faith and fair dealing.

After concluding that Travelers had not breached the insurance contract, the trial justice declared that she was not going to do any analysis as to count three of the complaint.  The trial justice explained that count three could not be reached unless and until there was success on counts one and two.  Consequently, the trial justice granted Travelers' motion for summary judgment.  In accordance with its bench decision, the court issued a written order, dated April 12, 2021, granting summary judgment to Travelers as to count three of Atmed's complaint which had previously been severed and stayed.  Notably, however, Travelers had not moved for summary judgment as to that count.[13]

After a careful review of the record, we conclude that count three of Atmed's complaint was not properly before the trial justice. *See Robinson v. Malinoff*, 770 A.2d 873, 876 (R.I. 2001) (holding that trial justice erred in granting summary judgment on claim not properly before the court).  "Our caselaw consistently has mandated that when a trial justice considers and rules on an issue *sua sponte*, the

---

[13] In fact, Travelers even argued in its memoranda in support of its cross-motion for summary judgment and in objection to Atmed's motion for summary judgment that count three of the complaint was not properly before the court.

- 24 -

parties must be afforded notice of the issue and allowed an opportunity to present evidence and argue against it." *Catucci v. Pacheco*, 866 A.2d 509, 515 (R.I. 2005). "Moreover, '[u]nder the general principles of the adversary system, a party should not be granted relief that it did not request.'" *Id.* (quoting *Providence Journal Co. v. Convention Center Authority*, 824 A.2d 1246, 1248 (R.I. 2003)).

In the present case, count three of the complaint was severed and stayed. The parties were not presented with the opportunity to fully debate the claims set forth in count three. *See id.* Furthermore, Travelers did not request summary judgment as to count three of Atmed's complaint. *See id.* Thus, we hold that the trial justice exceeded her authority in granting summary judgment in Travelers' favor as to that count of the complaint.

To the extent that Atmed contends that the court erred in rejecting its argument that Travelers breached the insurance contract by making misrepresentations of pertinent provisions of the policy, we note that "no action in bad faith can lie unless and until an insured has proven a breach of the insurance contract." *Skaling v. Aetna Insurance Company*, 799 A.2d 997, 1004 (R.I. 2002). We acknowledge, however, that, based upon the record before us—including Atmed's appellate contention that Travelers' alleged misrepresentations purportedly resulted in a significant delay in seeking a defense in the Superior Court case—these alleged misrepresentations could have caused Atmed to incur damages in the form of attorneys' fees from the

- 25 -

time the action was filed to the date on which Travelers agreed to defend Atmed. This Court has explained that insurers have a duty to fully and completely investigate claims by an insured. *Id.* at 1010 ("Insurers doing business in Rhode Island have an implied obligation to promptly and fully respond to their insured, to investigate a claim and to subject that claim to appropriate review.").

Recently, in *Houle v. Liberty Insurance Corporation*, 271 A.3d 591 (R.I. 2022), this Court vacated an order granting judgment on the pleadings where an insured had alleged that its insurer breached an insurance contract by failing to perform a full and complete investigation. *Houle*, 271 A.3d at 594-95. In *Houle*, this Court acknowledged that, inherent in every insurance contract is an implied covenant of good faith and fair dealing that places on insurers, "an implied obligation to promptly and fully respond to their insured, to investigate a claim and to subject that claim to appropriate review." *Id.* at 595 (quoting *Skaling*, 799 A.2d at 1010). This Court reasoned that "[i]t [could not] be said that the allegations as pled, and under any set of facts that may be proven at trial, would not support a claim for breach of contract or breach of the implied covenant of good faith and fair dealing." *Id.* In the present case, as in *Houle*, we conclude that the trial justice erred in granting summary judgment on count three because facts may be proven at trial which support a claim for breach of contract or breach of the implied covenant of good faith and fair dealing based upon Travelers' alleged misrepresentations.

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court with respects to counts one and two of the plaintiff's complaint. We vacate that portion of the judgment granting summary judgment on count three of the plaintiff's complaint. The papers may be returned to the Superior Court.



## STATE OF RHODE ISLAND

### SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Atmed Treatment Center, Inc. v. The Travelers Indemnity Company. |
| **Case Number** | No. 2021-130-Appeal.<br>(PC 19-11553) |
| **Date Opinion Filed** | December 9, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa E. Darigan |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Neil P. Philbin, Esq. |
| | For Defendant:<br><br>Brian W. Haynes, Esq. |